**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| JENELLE MAE MCKEAN, | Case No.: 4:19-cv-00141-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Respondent, | |

Pending before the Court is Petitioner Jenelle Mae McKean's Petition for Review, seeking review of the Social Security Administration's decision denying her application for Social Security Disability Insurance benefits for lack of disability.  *See* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  ADMINISTRATIVE PROCEEDINGS

On November 23, 2015, Petitioner Jenelle Mae McKean ("Petitioner") protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning June 1, 2012.  This claim was initially denied on March 2, 2016 and, again, on reconsideration on August 9, 2016.  On September 7, 2016, Petitioner timely filed a Request for Hearing.  On October 19, 2017, Administrative Law Judge ("ALJ") John C. Arkoosh held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Brad D. Parkinson, appeared and testified.  Bob G. Zadow, an impartial vocational expert, also appeared and testified at the same hearing.

**MEMORANDUM DECISION AND ORDER - 1**

On February 13, 2018, the ALJ issued a Decision denying Petitioner's claims, finding that she was not disabled within the meaning of the Social Security Act. Petitioner timely requested review from the Appeals Council and, on February 19, 2019, the Appeals Council denied Petitioner's Request for Review, making final the ALJ's Decision.

Having exhausted her administrative remedies, Petitioner timely filed the instant action, arguing generally that "[t]he conclusions and findings of fact of the [Respondent] are not supported by substantial evidence and are contrary to law and regulation." Pet. for Review, p. 2 (Dkt. 1). Specifically, Petitioner claims that (1) "[t]he ALJ's [residual functional capacity] assessment is not supported by substantial evidence as he failed to properly weigh the opinion of Dr. Heckard, the consultative examiner, as he mischaracterized the regulations to find [Petitioner's] fibromyalgia non-severe and support limiting the weight granted to Dr. Heckard"; and (2) "[Petitioner's] case was adjudicated by an improper and unconstitutionally appointed ALJ, and should be remanded for a new hearing with a different and constitutionally appointed ALJ." Pet.'s Brief, pp. 1, 7-15 (Dkt. 15). Petitioner therefore requests that the Court either reverse the ALJ's Decision and find that she is entitled to disability benefits or, alternatively, remand the case for further proceedings and award attorneys' fees. *See id.* at p. 15; *see also* Pet. for Review, p. 2 (Dkt. 1).

## II. <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual

decisions, they must be upheld, even when there is conflicting evidence.  *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support an ALJ's finding/conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

As to questions of fact, the Court's role is to review the record as a whole to determine whether it contains evidence allowing a reasonable mind to accept the conclusions reached by the ALJ.  *See Richardson*, 402 U.S. at 401.  The ALJ is responsible for determining credibility and resolving conflicts within the medical testimony  (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving any ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence contained in the record (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).  Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

As to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *See Matney*, 981 F.2d at 1019.  At the same time, the ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that

**MEMORANDUM DECISION AND ORDER - 3**

is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. <u>DISCUSSION</u>

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a five-step sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act. *See Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983).

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. § 404.1572(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "engaged in substantial gainful activity during the second quarter of 2017, . . . [but that] there has been a continuous 12-month period during which the claimant did not engage in substantial gainful activity." (AR 23) ("The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.") (internal citations omitted).

The second step requires a determination of whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration

**MEMORANDUM DECISION AND ORDER - 4**

requirement.  *See* 20 C.F.R. § 404.1520(c).  An impairment or combination of impairments is "severe" if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  *See* 20 C.F.R. § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, and 16-3p.  If there is no severe medically determinable impairment or combination of impairments, benefits are denied.  Here, the ALJ found that Petitioner has the following severe impairments:  "somatoform disorder, gastroesophageal reflux disease, [and] insomnia."  (AR 23).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  *See* 20 C.F.R. § 404.1509.  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments.  *See* (AR 24-25).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work.  *See* 20 C.F.R. § 404.1520(e).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  In making this finding, the ALJ must consider all of the claimant's impairments, including

**MEMORANDUM DECISION AND ORDER - 5**

impairments that are not severe.  *See* 20 C.F.R. § 404.1520(e), 404.1545; *see also* SSR 96-8p.

On this point, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift, carry, push, or pull 10 pounds frequently and 20 pounds occasionally.  She can stand or walk 6 hours of an 8-hour workday and sit 6 hours of an 8-hour workday.  She can frequently climb ramps and stairs and ladders, ropes, or scaffolds.  She can frequently balance, stoop, kneel, crouch, or crawl.  She must avoid concentrated exposure to hazards such as machinery and heights.

(AR 25).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  *See* 20 C.F.R. §§ 404.1512(f), 404.1560(c); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  Here, the ALJ found that Petitioner "is capable of performing past relevant work as a bartender or personal care attendant [because] [t]his work does not require the performance of work-related activities precluded by the claimant's [RFC]."  (AR 29).  Alternatively, considering Petitioner's age, education, work experience, and RFC, the ALJ concluded that there are other jobs that exist in the significant numbers in the national economy that she can also perform, including production assembler, inspector and hand packager, and ticket seller/taker.  *See* (AR 29-31).  Therefore, the ALJ concluded that Petitioner "has not been under a disability, as defined in the Social Security Act, from June 1, 2012, though the date of this decision."  (AR 31).

**B.    Analysis**

Petitioner contends on appeal that the ALJ's RFC determination is not supported by substantial evidence for failure to properly weigh the opinion of Ralph D. Heckard, M.D. against the guidelines for evaluating fibromyalgia found at SSR 12-2p.  *See* Pet.'s Brief, pp. 7-11 (Dkt.

**MEMORANDUM DECISION AND ORDER - 6**

15).  Respondent disagrees, arguing first that Dr. Heckard's opinion "was not sufficient to support fibromyalgia as a medically determinable impairment" and, second, that the ALJ "extensively reviewed evidence pertaining to fibromyalgia at step four [of the sequential process] and accounted for related limitations in the RFC."  Respt's Brief, pp. 4-8 (Dkt. 16).  For the reasons that follow, the Court concludes that the ALJ did not adequately assess Dr. Heckard's opinion and that, as a result, the ALJ's RFC determination is likewise lacking.

      1.    <u>The ALJ Improperly Weighed Dr. Heckard's Opinion</u>

The ALJ is to resolve ambiguities and conflicts in the medical record.  *See Magallanes*, 881 F.2d at 750.  In doing so, however, the ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  The ALJ need not, however, "accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012).  Additionally, the ALJ may discount opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  Finally, an ALJ is not bound to a physician's opinion of a claimant's physical condition or the ultimate issue of disability.  *Magallanes*, 881 F.2d at 751.

If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the

**MEMORANDUM DECISION AND ORDER - 7**

claimant's daily activities.  *See id.*; *see also Bayliss*, 427 F.3d 1211; *Connett v. Barnhart*, 340

F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

An ALJ also may reject a treating physician's opinion if it is based "to a large extent" on a

claimant's self-reports where those self-reports are properly discounted as not credible.  *See*

*Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

On February 24, 2016, Dr. Heckard found multiple "FM-type"[1] tender points,

summarizing in relevant part his "impressions" of Petitioner's conditions/abilities following

examination as:

> She does display mild expressed discomfort and lower back favoring with repeated
> squatting efforts.  She is able to sit, stand and walk unassisted and she can handle
> objects with both gross and fine manual motor dexterity.  Her reported and
> presenting condition could limit to some degree her capacity and endurance for
> engaging in prolonged or continuous physically exerting activities including but
> not limited to continuous uninterrupted standing or ambulating; repetitive bending
> with heavier lifting and carrying; frequent or repeated squatting, crouching, or
> crawling; or prolonged overhead or forward reaching heavier physical activities.
>
> . . . .
>
> There is a strong somatic emphasis of her level of daily pain symptoms and her
> current reported level of symptoms could limit her ability to engage in activities
> requiring prolonged or continuous attention, concentration, and persistence.

(AR 419-20).

The ALJ gave this opinion only "partial weight" because "there was little in [the

physician's] examination showing debilitating problems."  According to the ALJ, "[t]his one-

time examination by a non-treating source is not sufficient to establish the 1990 or 2010 ACR

criteria for fibromyalgia under SSR 12-2p."  (AR 28).  Hence, the assessment of Dr. Heckard's

opinion by the ALJ was premised, at least in significant part, on the ALJ's conclusion that

Petitioner's alleged fibromyalgia did not amount to a medically determinable impairment at step

---

[1]  It is presumed that Dr. Heckard's reference to "FM" is shorthand for fibromyalgia.

**MEMORANDUM DECISION AND ORDER - 8**

two of the sequential process.  *See id*; *see also* (AR 23) (at step two of sequential process, ALJ stating:  "Her records do not document repeated tender point examinations or ruling out of other causes of her symptoms.").  A closer examination of Dr. Heckard's opinion, however, measured against SSR 12-2p's template for diagnosing fibromyalgia highlights a potential issue with the ALJ's minimization of Dr. Heckard's opinion.

To begin, fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue."  *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004).  Typical symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue."  *Id.* at 590.  The disease is unusual because those suffering from it have "muscle strength, sensory functions, and reflexes [that] are normal."  *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001) (quoting Muhammad B. Yunus, FIBROMYALGIA SYNDROME:  BLUEPRINT FOR A RELIABLE DIAGNOSIS, Consultant, June 1996, at 1260).  "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling."  *Id.* (quoting Yunus, *supra*, at 1260).  Indeed, "[t]here is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain."  *Id.* The condition is diagnosed "entirely on the basis of the patients' reports of pain and other symptoms."  *Benecke*, 379 F.3d at 590.  "[T]here are no laboratory tests to confirm the diagnosis."  *Id.*

For a long time, fibromyalgia was "poorly understood within much of the medical community."  *Id.*  And, "[t]here used to be considerable skepticism that fibromyalgia was a real disease."  *Kennedy v. Lilly Extended Disability Plan*, 856 F.3d 1136, 1137 (7th Cir. 2017).  In earlier years, the Ninth Circuit Court of Appeals was reluctant to recognize fibromyalgia as an impairment that could cause disability.  *See Revels v. Berryhill*, 874 F.3d 648, 656-57 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 9**

2017) (citing *Rollins*, 261 F.3d at 857 ("Assuming, without deciding, that fibromyalgia does constitute a qualifying 'severe impairment' under the Act . . . .")).

However, relevant to the instant action, the Social Security Administration issued a ruling in 2012 recognizing fibromyalgia as a valid "basis for a finding of disability."  SSR 12-2P, 2012 WL 3104869, at *2 (July 25, 2012).  The Ruling contains two sets of criteria for diagnosing the condition, based on (1) the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia, and (2) the 2010 American College of Rheumatology Preliminary Diagnostic Criteria.  *See id*.  The first set of criteria concludes that a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has tenderness in at least 11 of 18 specified points on her body; and (3) there is evidence that other disorders are not accounting for the pain.  *Id*. at *2-3.  The second set of criteria asks if (1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has experience repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of  fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) there is evidence that other disorders are not accounting for the pain.  *Id*. at *3.

Therefore, a diagnosis of fibromyalgia does not rely on X-rays, MRIs or other objective tests.  Further, SSR 12-2P recognizes that the symptoms of fibromyalgia "wax and wane," and that a person may have "bad days and good days."  SSR-2P, at *6.  Consequently, the ruling warns that after a diagnosis of fibromyalgia is made, an RFC analysis should consider "a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have 'bad days and good days.'"  *Id*.

**MEMORANDUM DECISION AND ORDER - 10**

Here, the ALJ discredited Dr. Heckard's above-referenced opinion because Petitioner's records "do not document repeated tender point examinations or ruling out of other causes of her symptoms." (AR 23).[2]  This conclusion is not supported by substantial evidence in the record.[3]

First, SSR 12-2p identifies the 1990 criteria's 18 possible tender point sites as being located on each side of the body at the:  (1) occiput (base of the skull); (2) low cervical spine (back and side of the neck); (3) trapezius muscle (shoulder); (4) supraspinatus muscle (near the shoulder blade); (5) second rib (top of the rib cage near the sternum or breast bone); (6) lateral epicondyle (outer aspect of the elbow); (7) gluteal (top of the buttock); (8) greater trochanter (below the hip); and (9) inner aspect of the knee.  *See* SSR 12-2P, 2012 WL 3104869, at *3.

With this in mind, Dr. Heckard described his examination:

> On clinical examination today the patient has FM-type point tenderness at the anterior and posterior base of the neck, the infrascapular regions, the paralumbar region, and the points at the posterior superior iliac crests bilaterally.  There is also FM-type tenderness at the peri-elbow and peri-knee points.  There is palpation tenderness over the greater trochanteric bursa regions bilaterally.

(AR 419).  Respondent argues that, while Dr. Heckard noted several tender points, "they do not match the points listed in SSR 12-2p."  Resp't's Brief, pp. 5-6 (Dkt. 16).  According to Respondent, "even when interpreting the opinion in the light most favorable to Petitioner," "Dr.

---

[2]  This position would appear to consider both the 1990 and 2010 criteria (*supra*) in that the presence of "tender points" is part of the 1990 criteria, and the absence of other causes of Petitioner's symptoms speaks to both the 1990 and 2010 criteria.

[3]  Petitioner originally challenged the ALJ's decision to the extent the ALJ criticized Dr. Heckard's opinion by noting that Petitioner had not undergone multiple trigger point *examinations*.  *See* Pet.'s Brief, p. 8 (Dkt. 15) ("This requirement states that the pain must have persisted for three months, not that there be positive examination findings repeatedly throughout the three-month period.").  Respondent does not address this aspect of Petitioner's argument, focusing instead on the number and location of trigger points implicated by Dr. Heckard's opinion, while arguing that they do not align with SSR-2P's requirements.  *See* Resp't's Brief, pp. 5-8 (Dkt. 16).  Given the apparent progression of the argument, this Memorandum Decision does not speak to the necessity of any "repeated tender point examinations," but rather the alleged existence of tender point sites relative to Petitioner and her fibromyalgia claim.

**MEMORANDUM DECISION AND ORDER - 11**

Heckard's opinion mentions only ten of the 18 qualifying tender points."  *Id*. at p. 5; *see also id.* at p. 6 (attaching chart identifying (1) qualifying tender points under SSR 12-2p, (2) whether Dr. Heckard's opinion included reference to those qualifying tender points, and, (3) if so, number of tender points noted).  But this argument is not without unanswered questions – ones that neither the ALJ nor Respondent satisfactorily resolves.

For example, as Petitioner notes, Dr. Heckard found that Petitioner had tender points at "the anterior and posterior base of the neck."  *See* Pet.'s Reply Brief, p. 3 (Dkt. 17).  Respondent understood this assessment as equating to the two tender points associated with the low cervical spine.  *See* Respt's Brief, p. 6 (Dkt. 16).  But in giving meaning to Dr. Heckard's reference to tender points at *both* the anterior *and* posterior base of the neck, Petitioner argues that the two occiput tender points are *also* implicated – especially when considering the diagram of tender point sites within SSR 12-2p (and relied upon by Respondent (*see infra*)):

> This indicates that Dr. Heckard found [Petitioner] to have positive tender point findings at the anterior and posterior base of neck *bilaterally*.  According to the *Merriam-Webster Dictionary*, "anterior" means "situated before or toward the front."  "Posterior" is defined as "situated behind."  Therefore, Dr. Heckard found Plaintiff tender at four separate points of her neck; twice in the front of her neck, and twice at the back of her neck.
>
> According to the diagram contained within SSR 12-2p, this would indicate that [Petitioner] had the tender points at the low cervical (pictured on the front side of the diagram), as well as the occiput (pictured on the back of the diagram). Defendant grouped all four of these points into the low cervical spine section and therefore only counted two points. . . . .
>
> While [Respondent] pointed out that Dr. Heckard referenced points that do not directly correlate to those identified in SSR 12-2, and therefore grouped those points in with the ones properly identified, had he properly accounted for the appropriate points that Dr. Heckard did find, he would have noted that Dr. Heckard had still found 12 qualifying points while SSR 12-2p only requires 11.  Therefore, this portion of [Respondent's] argument cannot stand.

Pet.'s Reply Brief, p. 3 (Dkt. 17) (emphasis in original) (internal citations omitted).  That diagram reflects the following:

**MEMORANDUM DECISION AND ORDER - 12**



*See* SSR 12-2p, 77 Fed. Reg. at 43642; *see also* Respt's Brief, p. 7 (Dkt. 16).  From this, it is possible to gather that Dr. Heckard's reference to tender points at "the anterior and posterior base of the neck" aligns with (1) the occiput tender points reflected in the diagram's "back view," and (2) the low cervical tender points reflected in the diagram's "front view."[4]  And, if so, the requisite number of tender points for fibromyalgia exists.

Similarly, Dr. Heckard's reference to tender points at Petitioner's "infrascapular regions" is unaccounted for by Respondent, except to say that "none of the 18 qualifying tender points are located in the mid and lower back areas where the infrascapular and paralumbar regions are located."  *See* Respt's Brief, p. 6 (Dkt. 16).  But, where the infrascapular region is understood to

---

[4]  This diagram's depiction of tender point sites is undoubtedly imprecise and could be better illustrated.  However, any confusion resulting therefrom, highlights the possibility that Petitioner's arguments are valid and the ALJ's rationale simultaneously lacking.

**MEMORANDUM DECISION AND ORDER - 13**

be associated with the shoulder region, it is possible (especially when looking to the above-referenced diagram) that Dr. Heckard's mention of the same implicates tender points in either the trapezius muscle or supraspinatus muscle.[5]  Again, if so, the requisite number of tender points for fibromyalgia exists.

Second, to the extent the ALJ's criticism of Dr. Heckard's opinion is based on a failure to rule out other possible explanations for Petitioner's symptomology, that criticism is also misplaced.  To be sure, Dr. Heckard's findings must be viewed and considered in the context of surrounding medical record.  That record indicates that for roughly two years, Toni Miller, NP, treated Petitioner and, as part of such treatment, ordered a myriad of testing which ruled out other possible causes for Petitioner's pain.  *See, e.g.*, (AR 366) (9/24/14 treatment note:  "Labs to be drawn today to rule out thyroid disease and anemia . . . Will do basic labs to rule out inflammatory conditions"); (AR 368) (10/8/14 treatment note:  "Labs done on 9/24/14 ruled out thyroid disorder, anemia, or inflammatory process as etiology for her symptoms"); (AR 422) (2/19/15 treatment note:  "[patient] has had numerous labs in the past 2 years for other sources of her pain, all inflammatory markers etc. have been negative.").  Although Nurse Miller may not be an acceptable medical source for the purpose of *diagnosing* Petitioner's fibromyalgia, these records incorporate objective testing methods that indeed rule out other possible causes of her condition, consistent with the 1990 and 2010 criteria.  *See* (AR 552-54) (consulting physician, Rox Burkett, MD., concluding that, after reviewing claimant's case file (including Dr. Heckard's examination):  "The claimant has had multiple tests that do not reveal any of these problems

---

[5]  This is not to say that Respondent's position that the infrascapular region generally resides in the mid and lower back; but, in this setting, it would be too casual not to differentiate Dr. Heckard's references to "paralumbar region," "infrascapular regions," and "posterior superior iliac crests bilaterally," instead lumping them into a single gluteal region for the purposes of SSR 12-2p.

**MEMORANDUM DECISION AND ORDER - 14**

[(thyroid problems, lupus, arthritis, and other similar diagnoses)].  The criterion calls for reasonable attempt at treatment with medications for inflammation, arthritis, and other mental medications also have been tried without any good result. . . .  A review of the Social Security's policy regarding [fibromyalgia] show she has the diagnosis, has done her best, and continues to be significantly impacted with regards to her [activities of daily living] and overall loss of sustainable function."); *see also* Respt's Brief, p. 8 (Dkt. 16) (implying that Nurse Miller's notes inform SSR 12-2p's fibromyalgia analysis).

In sum, where the record can be read to indicate at least 11 documented tender points and also rule out other causes of Petitioner's symptoms, the ALJ's contrary findings (and, thus, his assessment of Dr. Heckard's opinion) are not supported by substantial evidence.[6]

2.      The ALJ Erred in Evaluating Petitioner's RFC

The ALJ determined that Petitioner retains the RFC to perform light work with certain limitations, that she is capable of performing certain past relevant work, and that there are other jobs that exist in the national economy that do not require activities precluded by her RFC.  *See* (AR 25-31).  The ALJ reasoned that Petitioner's RFC "is supported by the opinions of the consulting examining doctors and her longitudinal treatment history . . ."  (AR 29).  Petitioner counters that the ALJ erred on this issue, arguing that, where Dr. Heckard's opinion references limitations that preclude a capacity to perform light work, the ALJ's RFC determination is lacking.  *See* Pet.'s Brief, p. 10 (Dkt. 15) ("The ALJ begins by finding that Dr. Heckard's opinion is generally consistent with an RFC for light work.  However, Dr. Heckard specifically

---

[6]  Although the Court concludes that substantial evidence did not support the ALJ's reasons for rejecting fibromyalgia as a medically determinable impairment, because the ALJ found in Petitioner's favor at step two of the sequential process, there is no harmful error at step two itself.  *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).  As discussed below, however, the erroneous rejection was harmful at later steps, leading to the ALJ's erroneous rejection of evidence that may establish disability if properly evaluated.

**MEMORANDUM DECISION AND ORDER - 15**

noted that Petitioner was unable to perform prolonged standing or ambulating for prolonged periods without interruption, it is unclear how the ALJ came to this conclusion.") (citing (AR 28)).

Respondent submits that, "[e]ven if the ALJ had erred in assessing fibromyalgia at step two, the error was harmless . . . where the ALJ considers any limitations posed by the impairment at step four."  Respt's Brief, p. 8 (Dkt 16) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  Except, even though concluding that Petitioner can engage in light work, the ALJ did not take into account either (1) Dr. Heckard's opinion that Petitioner's ability to stand and/or ambulate is limited, or (2) Dr. Burkett's opinion of Petitioner's "much reduced RFC." (AR 419, 554).  These opinions inescapably cut against the ALJ's findings that Petitioner is able to perform light work and they were rejected, at least in part, because of the ALJ's conclusion that Dr. Heckard's examination did not establish fibromyalgia under the 1990 or 2010 criteria. *See* (AR 28).  In other words, this argument rises and falls with the Court's prior consideration of the ALJ's handling of Dr. Heckard's opinion.  *See supra*.

The reasons the ALJ provided to discount Dr. Heckard's opinion were not supported by substantial evidence.  The Court concludes the ALJ erred by discounting Dr. Heckard's opinion (as well as other medical opinions relying upon it).  That error is not harmless because the ALJ did not incorporate Dr. Heckard's opined limitations into the RFC and thus the ALJ may have relied at step five of the sequential process on jobs Petitioner *cannot* perform.  *See Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th Cir. 2012).[7]

---

[7]  This is a close call, particularly where Dr. Heckard's opinion on Petitioner's limitations is somewhat equivocal, and considering that Petitioner engaged in substantial gainful activity during the second quarter of 2017.  But where the ALJ's decision is stair-stepped on the absence of fibromyalgia as a medically determinable impairment (viewed through the lens of Dr. Heckard's opinion), those troublesome considerations are secondary to the Court's analysis on this record.

**MEMORANDUM DECISION AND ORDER - 16**

## IV.  **CONCLUSION**

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts.  *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

Here, the ALJ's reasons for rejecting Dr. Heckard's opinion is not supported by substantial evidence, in turn compromising the ALJ's RFC determination.  For these reasons, the Commissioner's decision is reversed and this case is remanded for further administrative proceedings before a different ALJ under sentence four of 42 U.S.C. § 405(g).[8]

On remand, the ALJ should reconsider fibromyalgia at step two of the sequential process, reevaluate the opinion of Dr. Heckard and other medical providers relying on Dr. Heckard's opinion, reassess Petitioner's RFC as needed, and proceed to step five of the sequential process as necessary.

## V.  **ORDER**

Based on the foregoing, the decision of the Commissioner is REVERSED and this case is remanded for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).



DATED: September 30, 2020

_____

Ronald E. Bush
Chief U.S. Magistrate Judge

---

[8]  Because this case must be remanded on other grounds, the Court need not address Petitioner's constitutional challenge, but does order that this case be handled by a different ALJ on remand.  *See Lucia v. SEC*, --- U.S. ---, 138 S.Ct. 2044, 2055, 201 L.Ed.2d 464 (2018).